The People *ex rel.* etc.,

*v.*

T. H. Hanson *et al.*

*Filed at Springfield April 2, 1894.*

1. Election—*organization of village—form of ballot.* A ballot cast at an election to organize certain territory as a village, which reads, "Against corporation," can not be counted on the question of incorporation. The ballots should be "For village organization under the general law," or "Against village organization under the general law," as required by the statute.

2. Continuance—*motion not supported by affidavit.* On the contest of an election for the organization of a village, a ballot of a voter was informal, being "Against corporation," instead of "Against village organization under the general law." After this fact was discovered by those contesting, and during the trial, they asked the court to postpone the trial, to enable them to produce the voter to explain his vote, but the application was not based upon any affidavit showing diligence in producing the voter as a witness, or excuse for the want of diligence: *Held,* that the postponement was properly denied.

3. Practice in the Supreme Court—*objections not raised in trial court—coming too late.* The rules of practice will not justify the reversal of a judgment upon a ground not suggested in the trial court, and raised in this court for the first time by way of reply, and when it is too late for the other side to be heard upon it. The general rule is, that the appellant must abide by the case made in his opening brief, and if he does not there show a sufficient ground for a reversal of the judgment, he can have no ground for complaint if it is affirmed.

Appeal from the Circuit Court of Hancock county; the Hon. Charles J. Scofield, Judge, presiding.

Messrs. J. B. Risse & Son, Messrs. W. C. Hooker & Son, and Mr. George Edmunds, for the appellants:

The court should have allowed plaintiff to produce the witness Finlay, and prove by him that he cast ballot No. 31, and intended thereby to vote against village organization under the general law. *People* v. *Matteson,* 17 Ill. 167; *Talkington* v. *Turner,* 71 id. 234; *Clark* v. *Robinson,* 88 id. 498; *McKinnon*

v. *People,* 110 id. 305; *Winmer* v. *Eaton,* 72 Iowa, 374; *Brown* v. *McCullom,* 76 id. 479.

One of the main questions presented is, whether said section 179, in respect to form of ballot, is imperative or directory. This section contains no negative words, or words prohibiting the use of a ballot in any other form. It is only when the provision of the statute is of the essence of the thing required to be done, that it is mandatory, in the absence of prohibitory words; otherwise, when it relates to form, and when an act is an incident, it is only directory. *Marshall* v. *Langworthy,* 6 Hill, 646; *Striker* v. *Kelly,* 7 id. 9; *Dement* v. *Rokker,* 126 Ill. 174; Endlich on Statutes, sec. 3, and cases cited.

Plaintiff was entitled to show the elector's intention in casting the ballot. *People* v. *Ferguson,* 8 N. Y. 102.

Whether a statute is directory or mandatory depends upon the sound construction of the nature and object of its requirement. *People* v. *Cook,* 14 Barb. 290; 8 N. Y. 67.

The intention is to be gathered from the necessity or reason of the enactment, and the meaning of the words, enlarged or restricted, according to the true intent. *Castner* v. *Walrod,* 83 Ill. 171; *Creese* v. *Aden,* 127 id. 237.

As to evidence to explain ballot, see *McKinnon* v. *People,* 110 Ill. 305; *Kreitz* v. *Behrensmeyer,* 125 id. 141.

Messrs. SHARP & BERRY BROS., for the appellees:

The law giving the form of ballots is mandatory. 6 Am. and Eng. Ency. of Law, 325, 327; *State* v. *McKennon,* 8 Ore. 493.

In determining upon a majority, blank votes or illegal votes, if any, are not to be counted, and a candidate may be chosen without receiving a majority of the votes of all who actually participated in the election, although the law required a majority to elect. Cooley's Const. Lim. (5th ed.) sec. 614.

When the statute says certain words shall be on the ballot, we take it for granted that the requirement of the law must

be complied with, and where it has not been complied with, as in the case at bar, the ballot should be rejected. Mechem on Public Offices, chap. 5, sec. 191; *People* v. *Township Board,* 14 Mich. 28.

Mr. Justice Bailey delivered the opinion of the Court:

This was an information in the nature of a *quo warranto,* brought by the state's attorney of Hancock county, on the relation of certain property-owners and tax-payers, to test the legality of the organization of the village of West Point, in that county. The information is brought against the officers of the village, and charges that, without any warrant or right whatsoever, T. H. Hanson was holding and exercising and had usurped the office of president, Henry Hinkle and five others the office of trustees, and J. W. Cunningham the office of clerk, of the village, and prays that they be required to answer by what warrant they hold and execute their respective offices.

The defendants, by their plea, set up in detail the proceedings for the organization of the village, resulting in an order declaring it duly organized, and calling an election for the choice of village officers, and that at such election the defendants were duly elected to their respective offices, and that they had qualified and taken possession of those offices, and that by that warrant they held the same and discharged the duties thereof.

To this plea the relators filed two replications, in the first of which it was alleged that, at the time of presenting the petition to be organized as a village, the territory embraced within the proposed organization did not contain three hundred inhabitants, and in the second of which it was alleged that, at the election upon the question of organizing as a village, there was not a majority of the votes polled in favor of organization.

Issues being duly joined upon these replications, the cause was tried before the court, a jury being waived, and upon such trial it was admitted that at the time of the presentation of

the petition for organization, the territory embraced in the proposed village contained three hundred inhabitants, thus disposing of the issue on the first replication. As applicable to the other issue, duly authenticated copies of the various proceedings alleged in the defendants' plea were read in evidence, including the poll-books, tally-sheets and returns of the election upon the question of organizing as a village, and also the certificate of the canvassing board, from which it appeared that forty-one votes were cast "For village organization under the general law," and forty votes "Against village organization under the general law," and that it was thereupon duly declared by the canvassing board that there was a majority of one vote cast "For village organization under the general law."

As it appeared, however, by the poll-books that eighty-two ballots were cast at the election, the court, at the instance of the relators, ordered the ballots to be opened and recounted, and upon such count it was found that forty-one votes were cast "For village organization under the general law," and forty votes "Against village organization under the general law," and that one ballot was cast on which were written the words, "Against corporation." This ballot had on it the number 31, and the name on the poll-book bearing that number was that of William B. Finley. The counsel for the relator thereupon asked the court to continue or postpone the trial to the following day, so that Finley, who, as counsel suggested, was old and infirm and lived about twelve miles distant, might be sent for as a witness, counsel stating that they would prove by Finley that he cast, the ballot in question, and that he intended thereby to vote against village organization under the general law. The continuance or postponement of the trial asked for being objected to by counsel for the defendants, was denied by the court, and there being no further evidence offered, the court, after hearing the arguments of counsel, gave judgment in favor of defendants. From that judgment the relators have appealed to this court.

Of course it is apparent that the judgment of the Circuit Court was reached only by disregarding and rejecting the ballot on which were written the words, "Against corporation," since if that ballot were counted as a vote "Against village organization under the general law," there would have been the same number of votes against as in favor of such organization, and there would consequently have been no majority in favor of organization, and the measure would have been defeated. The only question presented by the appeal then is, whether that ballot was properly rejected.

We think it very plain that the rejected ballot was not, on its face, entitled to be counted as a vote either for or against village organization. Section 2, of article 11, of the general law in relation to the organization of cities and villages, provides that, in proceedings to organize a village, each qualified voter, resident within the proposed village, shall have the right to cast a ballot at the election, with the words thereon, "For village organization under the general law," or "Against village organization under the general law," and by section 7 it is provided that if a majority of the votes cast at such election is for village organization under the general law, the proposed village, with the boundaries and name mentioned in the petition, shall from thenceforth be deemed an organized village under the statute. But it is claimed, (1) that it was competent for the relators to show by extrinsic evidence that the intention of the voter who cast the ballot was, to vote against village organization under the general law, and, (2) that the court erred in refusing to postpone the trial for the purpose of giving the relators an opportunity to produce the voter as a witness, so as to prove by him his intention in casting a ballot with the words "Against corporation" written thereon. It is manifest that if either of these two propositions is decided adversely to the relators, the judgment must be affirmed.

Without expressing any opinion then upon the question whether the rejected ballot might not have been explained by

Additional opinion of the Court.

the testimony of the voter, it is sufficient to say, that no error is shown to have been committed by the court in refusing to postpone the trial for the purpose of giving the relators an opportunity to produce the voter as a witness. At the time the application for such postponement was made, the trial was in progress. The application was based upon no affidavit or other proof, and nothing was submitted for the court to act upon beyond the mere unsworn suggestion of counsel. That suggestion was merely that the witness was old and feeble, and lived about twelve miles away, and that the relators could prove by him that he cast the ballot in question, and that he intended thereby to vote against village organization under the general law. No proof or suggestion even was made that the materiality of his testimony had then for the first time become known to counsel, nor was the least showing made of any diligence on their part in ascertaining the materiality of his testimony, or in procuring his attendance as a witness. It is too clear to require discussion, that no case was made out which made it the duty of the court to postpone the trial, and it follows that the refusal of the court to grant such postponement was not an error which can be assigned on appeal.

We find no error in the record, and the judgment will therefore be affirmed.                    *Judgment affirmed.*

Upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM: By their petition for a rehearing, the relators make the single point, that the election upon the question of organizing the village was not held under the Australian Ballot Law. This point was not made in the Circuit Court, and it was suggested in this court for the first time in the last six lines of the relators' reply brief. We did not notice it in our opinion because it came too late. The rules of practice will not justify the reversal of a judgment upon a ground not sug-

gested in the trial court, and raised in this court for the first time by way of reply, and when it is too late for the other side to be heard upon it.   The general rule, and one from which we see no cause for departing in this case, is, that the appellants must abide by the case made in their opening brief, and if they do not there show a sufficient ground for a reversal of the judgment, they can have no ground of complaint if it is affirmed.

Furthermore, the question as to the mode in which the election was conducted was not presented by the pleadings.  As is stated in the foregoing opinion, the replications filed to the plea setting up the proceedings which resulted in the organization of the village, including the election, raised but two issues of fact, viz., (1) that the territory embraced in the proposed village did not contain three hundred inhabitants, and (2) that at the election, there were not a majority of the votes polled in favor of organization.   Of course, by familiar rules of pleading, all facts alleged in the plea and not traversed by the replications were impliedly admitted.   The issue tendered by the first replication having been abandoned, the only issue before the court at the trial was, whether a majority of the votes polled were in favor of organization.  The question as to the mode in which the election was held, or of its validity, was not presented by the pleadings, but the relators, by failing to raise the issue by replication, impliedly admitted that the election was valid.  The issue tendered by them having been found against them, they will not be permitted now to go back and recall their admission, so as to raise a new issue.

We see no ground for awarding a rehearing, and the petition therefor will accordingly be denied.

*Rehearing denied.*